UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>v.<br>MARKO LEOPARD,<br>　　　　　　Defendant. | Case No. 2:17-cr-00306-JCM-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mot Dismiss – ECF No. 468) |

Before the court is defendant Marko Leopard's ("Leopard") Motion to Dismiss Indictment Under the 5th Amendment Double Jeopardy and Due Process Clause (ECF No. 468), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the motion, the government's Opposition (ECF No. 502), and Leopard's Reply (ECF No. 518).[1]

## BACKGROUND

**I.   THE SECOND SUPERSEDING INDICTMENT**

Defendant Marko Leopard (a.k.a. "Leopardmk") and 34 co-defendants are charged in a Second Superseding Indictment (ECF No. 303) ("Infraud indictment") returned January 30, 2018.[2] This case arises from allegations that the defendants operated a criminal organization known as "Infraud" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Defendants allegedly engaged in identity theft and financial fraud with acts that include, but are not limited to, money laundering, trafficking in stolen means of identification;

---

[1] Defendant Pius Wilson filed an omnibus Motion for Joinder (ECF No. 481) seeking to adopt the motions of his co-defendants to the extent any motion is applicable to him. Part of the current motion addresses a co-defendant's prior conviction. Those arguments are not applicable to him. The rest of the motion involves a legal question about the racketeering conspiracy count, which also charges Wilson. The court grants Wilson's joinder motion as to those arguments.

[2] A total of 36 defendants were named in the Infraud indictment. One defendant has been dismissed.

trafficking in, production and use of counterfeit identification; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; bank fraud; and wire fraud, as well as services in connection with all of those acts. ECF No. 303 at 6, ¶ 1.

Mr. Leopard is charged in count one with racketeering conspiracy in violation of 18 U.S.C. § 1962(d).[3] Count one alleges the defendants were employed by and associated with the Infraud "enterprise" and knowingly conspired to violate § 1962(c) by participating in a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (fraud by wire, radio, or television), § 1344 (bank fraud), and § 1543 (forgery or false use of passport). ECF No. 303 at 24, ¶ 12.

With regard to overt acts, Mr. Leopard is accused as follows:

> On or about October 29, 2013, **Leopard [29]** began handling the website traffic for an AVS selling compromised credit card dumps, which was owned by **Unindicted Co-conspirator W.**
>
> On or about November 3, 2013, **Leopard [29]** began hosting the website "tonymontana.cc," which belonged to Infraud member **Doe #1 [26]** and served as an outlet for **Doe #1 [26]** to sell dumps to Infraud members and associates.

*Id.* at 35, ¶¶ 14.88–14.89.

## II.     THE MOTION TO DISMISS

Mr. Leopard's motion (ECF No. 468) asserts that he was convicted in Macedonia for the same facts as this prosecution. He argues the charge against him should be dismissed because, under the Fifth Amendment's Double Jeopardy Clause, a prior conviction by a foreign government prohibits a second prosecution in the United States. He claims that English common law and the International Covenant on Civil and Political Rights ("Covenant") reflect this prohibition.

In addition, the motion asserts that count one should be dismissed against him because the laws of the United States are intended for domestic application, not extraterritorial application. A presumption exists against extraterritorial application. Thus, the government must demonstrate "clear evidence of congressional intent" to apply the racketeering conspiracy statute beyond the

---

[3] Counts two through nine allege possession of 15 or more counterfeit and unauthorized access devises in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(I), along with 18 U.S.C. § 2. ECF No. 303 at 39–42.

2

borders of the United States.  Citing cases involving organized crime, Leopard argues the government cannot show that Congress intended to apply 18 U.S.C. § 1962(d) outside the United States.  Thus, the court should grant his motion.

The government opposes the motion, arguing that Supreme Court precedent has repeatedly held that a prior prosecution by a separate sovereign does not bar the United States from bringing a federal prosecution for the same offense.  Resp. (ECF No. 502).  The government points out that Leopard fails to cite a single American majority opinion to support his claim that the Double Jeopardy clause applies when a foreign government brought the previous prosecution.

With respect to the double jeopardy provision Leopard identifies in the Covenant, the response notes that the United States adopted the Covenant with the express reservation that the prohibition applies " '*only* when the judgment of acquittal has been rendered by a court *of the same governmental unit*'."  *Id.* at 4 (quoting U.S. Reservations, Declarations and Understandings, International Covenant on Civil and Political Rights, 138 Cong. Rec. 8071 (1992), Understanding (4), *available at* https://treaties.un.org/pages/ViewDetails.aspx?src=IND&mtdsg_no=IV-4&chapter=4&lang=en (last visited Apr. 8, 2019)).  The Covenant does not apply here because Macedonia and the United States are not "the same governmental unit" and there has been no "judgment of acquittal."

Additionally, the response argues the Macedonian prosecution was not for the "same offense" as the racketeering conspiracy.  The judgement states that Leopard's offense was "Making of and using fake payment cards" in violation of the Macedonian Criminal Code.  Although the motion vaguely claims the two cases involve the same allegations, it fails to analyze whether the Macedonian offense is the "same offense" as count one.  To prove the RICO conspiracy charge, the government must show numerous different elements and facts beyond making and using fake payment cards; thus, the two offenses are not the same.

The government further argues the Indictment does not allege an extraterritorial application of RICO.  Although Leopard "himself may have been located outside of the United States, his conduct had effects *within* the United States – conduct and effects of the type that Congress sought to regulate when it passed RICO."  *Id.* at 7.  Therefore, the government maintains that count one

alleges an appropriate domestic application of RICO.

In his Reply (ECF No. 518), Leopard asserts that the United States will not be deprived of its right to enforce its own laws by applying double jeopardy principles because the "much graver offense" was already pursued in Macedonia. This case should be dismissed because "Macedonia already did all the work of prosecuting, convicting, sentencing and punishing Mr. Leopard." *Id.* at 5. Leopard also contends that *Blockburger v. United States*, 284 U.S. 299 (1932), is inapplicable to the specific issues raised in his motion because the case did not analyze whether a foreign offense was the same as an offense under the laws of the United States. Even if *Blockburger* applies, Leopard argues the specific allegations show that the two cases involve the "same offense" for double jeopardy purposes because the charging documents mirror each other. They both allege: (i) activity occurring during the same time, (ii) activity involving payment/credit cards and/or credit card "dumps," (iii) activity involving websites and/or hosting websites for others, (iv) payments/transactions involving Western Union and/or Moneygram, and (v) use of the website tonymontana.cc. *Id.* at 6.

As to the extraterritorial application of RICO, Leopard claims the government's analysis suggests "there is no limit to RICO – that it can be utilized to prosecute any person, anywhere in the world, so long as the internet is utilized to engage in the alleged offense." *Id.* at 8. He argues that the government has not demonstrated that the underlying racketeering acts were intended to have extraterritorial application. Finally, Leopard claims this case does not match the facts of another case in this district, *United States v. Thomas*, 2:12-cr-0004-APG-GWF, 2014 WL 1763766 (D. Nev. May 1, 2014), relied upon by the government because there is no specific allegation that he defrauded United States financial institutions such as Visa, MasterCard, Discover, and American Express.

## DISCUSSION

**I. APPLICABLE LEGAL STANDARDS**

**A. Motion to Dismiss under Rule 12**

"An indictment 'must be a plain, concise and definite written statement of the essential facts constituting the offense charged'." *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir.

4

2010) (quoting Fed. R. Crim. P. 7(c)(1)). An indictment is "sufficient if it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend' and (2) 'enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense'." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). An indictment is generally sufficient if it sets forth the offense in the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117.

Pursuant to Rule 12 Federal Rules of Criminal Procedure,[4] a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions which must be made before trial. Among them is a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The court "cannot consider evidence that does not appear on the face of the indictment." *Kelly*, 874 F.3d at 1046 (citing *Lyle*, 742 F.3d at 436; *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). The court looks at the indictment "as a whole, include facts which are necessarily implied, and construe it according to common sense." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016). The test of an indictment's sufficiency "is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Livingston*, 725 F.3d 1141, 1146–47 (9th Cir. 2013) (internal quotation and bracketing omitted).

## II. ANALYSIS AND DECISION

### A. Mr. Leopard's Macedonian Conviction Does Not Bar the Current Prosecution

The Double Jeopardy Clause of the Fifth Amendment protects a person from being "twice

---

[4] All references to a "Rule" or the "Rules" in this order refer to the Federal Rules of Criminal Procedure.

put in jeopardy of life or limb" for the same criminal offense. U.S. Const. amend. V. The clause provides "three separate constitutional protections," it protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Camacho*, 413 F.3d 985, 988 (9th Cir. 2005) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

The Supreme Court has repeatedly held that the Double Jeopardy Clause does not bar the United States from pursuing a federal prosecution after a separate sovereign brought a prosecution for the same offense. *See, e.g.*, *Puerto Rico v. Sanchez Valle*, --- U.S. ----, 136 S. Ct. 1863, 1871–72 (2016).[5] Pursuant to the "dual-sovereignty doctrine, a single act gives rise to distinct offenses—and thus may subject a person to successive prosecutions—if it violates the laws of separate sovereigns." *Id.* at 1867. "To determine whether two prosecuting authorities are different sovereigns for double jeopardy purposes," courts ask "a narrow, historically focused question": do the "prosecutorial powers of the two jurisdictions have independent origins" or do "those powers derive from the same 'ultimate source'." *Id.* (quoting *Wheeler*, 435 U.S. at 320). "If two entities derive their power to punish from wholly independent sources," then "they may bring successive prosecutions." *Id.* at 1871. However, if the two entities "draw their power from the same ultimate source," they cannot. *Id.*

The Supreme Court has recognized that an "independent nation" is a separate sovereign for the same reason the States are separate sovereigns: because foreign governments exercise "prosecutorial power that is not traceable to any congressional conferral of authority." *Id.* at 1873 n.5 (distinguishing States, Indian tribes, and foreign countries, which are separate sovereigns from municipalities and territories, which are not distinct sovereigns). *Accord United States v. Rashed*, 234 F.3d 1280, 1282–86 (D.C. Cir. 2000) (holding that prosecution by Greece did not bar later prosecution by the United States); *United States v. Chua Han Mow*, 730 F.2d 1308, 1313 (9th Cir. 1984) (rejecting double jeopardy argument regarding defendant's Malaysian conviction);

---

[5] *See also United States v. Wheeler*, 435 U.S. 313, 318 (1978) (barring successive prosecutions by a separate sovereign would "deprive the latter of the right to enforce its own laws."); *Abbate v. United States*, 359 U.S. 187, 195 (1959) (declining to overrule the "firmly established principle" allowing federal prosecution following a state prosecution).

*United States v. Richardson*, 580 F.2d 946, 947 (9th Cir. 1978) (holding that "prosecution by a *foreign* sovereign does not preclude the United States from bringing criminal charges" and rejecting argument that an international narcotics treaty represented "an agreement to refrain from prosecuting a defendant who has previously been tried by another signatory nation").

Here, Leopard's motion asks the court to dismiss the charge against him because it constitutes a second prosecution for the same offense as his conviction in Macedonia, violating the Double Jeopardy Clause. However, the law on this issue is well established and clear. A federal prosecution of a defendant after a foreign sovereign has secured a conviction for the same offense does not violate the Double Jeopardy Clause. Leopard is simply wrong that the Covenant and English common law preclude a second prosecution. The United States and Macedonia are separate sovereigns. Thus, the United States is free to prosecute Leopard's criminal acts which violate U.S. law.

Additionally, Mr. Leopard has not shown that his offense under the Macedonian Criminal Code has the same elements as the RICO conspiracy offense charged in the Infraud indictment. When a defendant is accused of violating two different criminal statutes, courts apply the "same-elements" test announced in *Blockburger* to examine whether there is "an identity of *statutory elements* between the two charges against him." *Currier v. Virginia*, --- U.S. ----, 138 S. Ct. 2144, 2153 (2018) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). The test is satisfied, and double jeopardy is not implicated, so long as each offense "requires proof of a fact that the other does not," even if there is "a substantial overlap in the proof offered to establish the crimes." *United States v. Wahchumwah*, 710 F.3d 862, 869 (9th Cir. 2013) (quoting *Albernaz v. United States*, 450 U.S. 333, 338 (1981)). Leopard argues that this case involves the same *allegations* as the Macedonian conviction, but provides no analysis comparing the *elements* of the two offenses. Under *Blockburger* and its progeny, the charging documents may share overlapping allegations without violating double jeopardy—it is the statutory elements that must be analyzed. As the response points out, the government must prove numerous different elements and facts beyond making and using fake payment cards to convict Leopard of RICO conspiracy. The court finds that double jeopardy does not preclude the United States from charging Leopard in this case.

**B. The Indictment is Not an Extraterritorial Application of the RICO Statute**

When dealing with extraterritorial application of a statute, courts apply a two-step framework that begins with a "presumption that United States statutes do not apply to foreign conduct." *United States v. Ubaldo*, 859 F.3d 690, 700 (9th Cir. 2017) (citing *RJR Nabisco, Inc. v. European Cmty.*, --- U.S. ----, 136 S. Ct. 2090, 2100 (2016)), *cert. denied*, 138 S. Ct. 704 (2018). First, the court "determines whether the presumption against extraterritorial application has been rebutted by 'clear and affirmative indication' in the statute." *Id.* (quoting *RJR Nabisco*, 136 S. Ct. at 2101) (internal alteration omitted). If so, the court does not need to address the second step. *Id.* If not, the statute does not apply extraterritorially, and the court must then determine "whether the case at hand 'involves a domestic application of the statute' by analyzing the 'focus' of the statute." *Id.*;[6] *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). At step two, an indictment "alleges *domestic* violations" of a statute when it alleges sufficient conduct in the United States to satisfy every essential element of the statute. *RJR Nabisco*, 136 S. Ct. at 2106.

RICO establishes four criminal offenses "involving the activities of organized criminal groups in relation to an enterprise." *Id.* at 2096 (citing 18 U.S.C. §§ 1962(a)–(d)). Section 1962 makes it unlawful: (a) to invest income derived from a pattern of racketeering activity in an enterprise; (b) to acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity; and (d) to conspire to violate any of the other three prohibitions. *Id.* at 2097.

The Supreme Court has held that the presumption against extraterritoriality was rebutted for certain applications of § 1962. *Id.* at 2101, 2013 ("RICO applies to some foreign racketeering activity"). RICO's § 1962(b) and (c) can apply extraterritorially but only to the extent that the predicate offenses alleged in a particular case themselves apply extraterritorially. *Id.* at 2101–02, 2105 ("Congress intended the prohibitions in 18 U.S.C. §§ 1962(b) and (c) to apply

---

[6] "Because a finding of extraterritoriality at step one will obviate step two's 'focus' inquiry," it will usually be preferable for courts to proceed in the normal sequence, but courts are not precluded from starting at step two in appropriate cases. *RJR Nabisco*, 136 S. Ct. at 2101 n.5.

extraterritorially in tandem with the underlying predicates."); 18 U.S.C. § 1961 (identifying predicate offenses in the definition of "racketeering activity").[7]  "Although a number of RICO predicates have extraterritorial effect, many do not." *RJR Nabisco*, 136 S. Ct. at 2102. At step two of *RJR Nabisco*'s framework, an indictment alleges a domestic RICO offense if the alleged pattern of racketeering activity consists entirely of predicate offenses committed in the United States. *Id.* at 2105 (citing *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 142 (2d Cir. 2014) ("If domestic conduct satisfies every essential element to prove a violation of a United States statute that does not apply extraterritorially, that statute is violated even if some further conduct contributing to the violation occurred outside the United States."), *rev'd and remanded*, 136 S. Ct. 2090 (2016)).

Mr. Leopard argues that Congress did not intend RICO's conspiracy statute, § 1962(d), to apply outside the United States. Notably, the Supreme Court declined to reach the issue of whether § 1962(d) should be treated differently from RICO's substantive provisions (§ 1962(a), (b), or (c)) that a defendant allegedly conspires to violate. *RJR Nabisco*, 136 S. Ct. at 2103. The government maintains that count one does not allege an extraterritorial application of RICO since the criminal conduct alleged had effects within the United States and RICO has permissible domestic application when the alleged conduct is within the focus of congressional concern.

The Infraud indictment sufficiently alleges facts showing a domestic application of RICO, even if the conspiracy provision or the predicate offenses do not apply extraterritorially.[8] The Infraud indictment alleges the defendants knowingly conspired to violate RICO's § 1962(c) by conducting Infraud's affairs through a pattern of racketeering activity. ECF No. 303 at 24, ¶ 12. Infraud's activities purportedly affected both interstate and foreign commerce as its members and associates operated Infraud in Las Vegas, Nevada, throughout the United States, and the rest of the world. *Id.* at 11, 24, ¶¶ 4, 12. Defendants allegedly purchased compromised credit card

---

[7] *RJR Nabisco* expressly abrogated *U.S. v. Chao Fan Xu*, 706 F.3d 965 (9th Cir. 2013), which held that RICO did not apply extraterritorially.

[8] The Infraud indictment alleges predicate offenses under 18 U.S.C. §§ 1028 (fraud and related activity connected to identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (wire fraud), § 1344 (bank fraud), and § 1543 (forgery or false use of passport).

numbers from numerous individuals residing in Nevada. *Id.* at 27, 30, 38–39, ¶¶ 14.17, 14.48, 14.114—14.117. They trafficked in device-making equipment used in the production of counterfeit access devices issued, owned, managed, and controlled by American credit card companies such as VISA, MasterCard, American Express, and Discover. *Id.* at 32, 35–36, ¶¶ 14.63, 14.92, 14.96. They posted and sold compromised logins for websites owned, managed, and controlled by American companies such as PayPal and Craig's List. *Id.* at 28–29, 32, 34, 37, ¶¶ 14.33–14.34, 14.67, 14.78, 14.106. They advertised a "World Wide Travel Agency," offering to "fraudulently book flights, rental cars, hotels, and seats at United States concerts and sporting events for Infraud members at a fraction of their actual price." *Id.* at 32, ¶ 14.62. They advertised on the Infraud forum promoting the "best dump services in market" with " 'only' United States dumps," "listing inventory from various States," and boasting of " '120K USA updates' covering 'Visa, Master Amex, Discover'." *Id.* at 36, ¶¶ 14.95–14.96.

The court finds that the Infraud indictment alleges substantial racketeering activity connected to the United States. *RJR Nabisco* allows courts to look for a pattern of racketeering activity consisting of predicate offenses committed in the United States. *See* 136 S. Ct. at 2105. Analyzing similar facts and applying *RJR Nabisco*, the Ninth Circuit has held that the "indictment sufficiently alleged a domestic application of the RICO statute with sufficient ties to U.S. commerce." *United States v. Thomas*, 660 F. App'x 497, 499 (9th Cir. 2016) (citing *RJR Nabisco*, 136 S. Ct. at 2105–06), *aff'g* 2:12-cr-0004-APG-GWF, 2014 WL 1763766 (D. Nev. May 1, 2014). The government is not required to specifically allege that Leopard himself committed each overt act in the United States. *See United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (noting that "a RICO conspiracy under § 1962(d) requires only that the defendant was aware of the essential nature and scope of the enterprise and intended to participate in it") (quotation omitted). Although Infraud's members and associates used the internet to engage in criminal conduct while in the District of Nevada and elsewhere, the RICO conspiracy count alleges predicate offenses that occurred in the United States.

/ / /

/ / /

For the foregoing reasons,

**IT IS RECOMMENDED** that Leopard's Motion to Dismiss Indictment Under the 5th Amendment Double Jeopardy Due Process Clause (ECF No. 468) be **DENIED**.

DATED this 8th day of April 2019.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

11